**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IMAGO SCIENTIFIC INSTRUMENT** | ) | |
| **CORP., OXFORD NANOSCIENCES,** | ) | |
| **LTD., and THOMAS F. KELLY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No. 07-CV-00459-XR** |
| | ) | |
| **WILLIAM W. CHISM, II.,** | ) | |
| **QUANTUMSTAGE, INC., and** | ) | |
| **OPTICAL ANALYTICS, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER TRANSFERRING CASE TO THE AUSTIN DIVISION OF THE WESTERN**
**DISTRICT OF TEXAS**

On this date, the Court considered the parties' briefs in response to the Court's order to show

cause as to which division of the Western District of Texas would be appropriate to entertain this

action pursuant to 28 U.S.C. § 1404(b).  Defendants William Chism, Quantumstage, Inc. and Optical

Analytics, Inc. request that this action be transferred to the Pecos Division, while Plaintiffs Imago

Scientific Instruments Corp., Oxford Nanosciences, Ltd., and Thomas F. Kelly request that it be

transferred to the Austin Division.  For the reasons discussed below, the Court will TRANSFER this

case to the Austin Division of the Western District of Texas.

**I.  Factual and Procedural Background**

Plaintiffs commenced this action against Defendants for common law

fraud/misrepresentation, intentional misrepresentation, breach of contract, strict liability

misrepresentation, conversion and correction of inventorships of the '806 patent in the United States

District court for the Western District of Wisconsin based on diversity of citizenship.  In the Western

District of Wisconsin, Defendants filed motions to dismiss for lack of personal jurisdiction and

improper venue, or in the alternative, to transfer venue.  On May 17, 2007, without addressing the motion to dismiss for lack of personal jurisdiction, the district court in Wisconsin transferred this action to the Western District of Texas without specifying a division.  This action is now presently before the San Antonio Division of the Western District of Texas.[1]

Plaintiff Imago Scientific Instruments Corporation ("Imago") is a company organized under the laws of Delaware with its principal place of business in Madison, Wisconsin.  Oxford Nanosciences, Limited ("Oxford") is a subsidiary of Imago incorporated under the laws of the United Kingdom and with its principal place of business in the United Kingdom.  Thomas F. Kelly is the chairman of Imago, the CTO of Imago and Oxford, and a resident of Madison, Wisconsin.

Defendant William W. Chism, II ("Chism") is a resident of Austin, Texas.  Quantumstage, Incorporated ("Quantumstage") and Optical Analytics, Incorporated ("Optical Analytics") are both Texas corporations with their principal places of business in Pecos, Texas.

In late 2002, Imago began discussion with Chism about the Imago Laser Pulsing Project.  In December 2002, Imago met with Chism at his work: International Sematech in Austin, Texas.  On March 17, 2003, Chism informed Imago that he would be leaving Sematech on April 30, 2003.  After leaving Sematech, Chism formed a new company, Quantumstage.

From May 29 to June 2, 2003 Chism visited Imago in Madison, Wisconsin to discuss jointly developed technology.  Imago reimbursed him for his expenses.  In July 2003 and August 2003, Chism filed provisional patent applications with the United States Patent Office for a laser stimulated atom probe and a pulsed laser atom probe, respectively.  Chism claimed himself to be the sole inventor of these products.  These patent applications were registered under his name and included his mailing address in Pecos, Texas.  The applications also included a hand-written note adding a

---

[1]The Western District includes seven divisions: San Antonio, Austin, Del Rio, El Paso, Midland-Odessa, Pecos, and Waco.

mailing address in Austin, Texas.  Imago alleges that these patent applications included confidential information obtained from Imago, including its Laser Pulsing Technology.

On August 11, 2003 Chism, on behalf of Quantum, executed a Non-Disclosure Agreement with Imago.  That August, he also visited the Imago facilities in Madison, Wisconsin for the purposes of reviewing the project plan and completing a contract.  Imago paid Chism $7,500.00 for his services and reimbursed his expenses.  Collaboration between Imago and Chism ended in October 2003.

In November 2003, Chism began collaborating with Oxford, which at the time was Imago's major competitor in the atom probe microscope market.  Imago alleges that Chism disclosed confidential information obtained from Imago to Oxford.  In February 2004, Chism created a new corporation, Optical Analytics.

In March 2004, Chism on behalf of Optical Analytics entered into a licensing agreement with Oxford for its Provisional Patent Applications and New Patent Application.  On or about June 30, 2004 Chism filed patent applications on the technology disclosed in the provisional patent applications.  On October 17, 2006, the United States Patent and Trademark Office issues patent '806 for a "laser stimulated atom probe characterization of semiconductor and dielectric structures."

On June 1, 2005, Imago filed a civil action in the Western District of Wisconsin against Chism, Quantumstage, and Optical Analytics for fraud/misrepresentation, breach of contract, conversion, and unfair competition.  This case was voluntarily dismissed by plaintiff without prejudice on September 1, 2005, and the parties subsequently entered into a Conditional Standstill and Tolling Agreement.

On April 11, 2006, Imago purchased the assets of Oxford Nanosciences, Incorporated.  Oxford is now a subsidiary of Imago.  On November 9, 2006, Chism on behalf of Optical filed a civil

action against Imago and Tom Kelly in the 143rd Judicial District Court of Reeves County, Texas,[2] *Optical Analytics, Inc. v. Imago Scientific Instruments Corporation and Tom Kelly*, Case No. 06-11-18675-CVR ("Texas State Action"). The claims alleged in the Texas State Action included tortious interference with contract, tortious interference with prospective business relations, slander of title and business disparagement. Defendants removed the action to the Pecos Division of the Western District of Texas, Case No. P-07-CA-3-H, which granted Optical Analytics' motion to remand the case back to state court because the notice of removal was untimely filed.

On May 17, 2007, the present action was transferred from the Western District of Wisconsin to the San Antonio Division of the Western District of Texas. On May 30, 2007, Plaintiffs and Defendants were ordered to show cause regarding which division in the Western District of Texas should entertain this action.

## II. Defendants' and Plaintiffs' Response to the Show Cause Order

Defendants argue that the proper division is the Pecos Division. Defendants argue that the pending Texas State Action in Reeves County warrants a transfer to Pecos because it would be "most logical." Second, the Pecos Division has "relatively small docket congestion." If this Court does not transfer the case to the Pecos Division, Plaintiffs request that the Court transfer the case to the Austin Division because several Defendants and witnesses reside in Austin.

Plaintiffs argue that this action should be transferred to the Austin Division and that their choice of forum should control. Their primary argument for transferring to Austin is based on the convenience of all the parties, including the defendants, and the convenience of potential third-party witnesses. Citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), Plaintiffs state that the Court should seek to "prevent the waste of time, energy and money, and to protect litigants, and witnesses and the public against unnecessary inconvenience and expense." Furthermore, Plaintiffs argue that

_____

[2]Pecos is the county seat of Reeves County.

4

the location of the non-party witnesses should be a major factor considered.

Because no witnesses for either party resides in Pecos, Plaintiffs argue that both party and non-party witnesses would have to travel to Pecos.  Furthermore, if the trial was in Austin, Plaintiffs' witnesses would have a shorter and simpler way of reaching proceedings than if it was in Pecos. Therefore, Plaintiffs argue that the Austin Division is more convenient than the Pecos Division.

### III.  Legal Analysis

The Court has discretion to transfer this case to another division pursuant to 28 U.S.C. § 1404 "for the convenience of parties and witnesses" and "in the interests of justice."  In particular, 28 U.S.C. §1404(b) states that a civil action "may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."  In choosing whether to exercise the discretion allowed by section 1404(b), the Court will base its decision on the established standard governing section 1404(a) transfers. *See Tapia v. Dugger,* No. SA-06-CA-0147-XR, 2006 WL 2620530 at *3 (W.D. Tex. 2006); *Zamora-Garcia v. Moore*, No. M-05-331, 2006 WL 3341034, at *2 (S.D. Tex. 2006); *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 768 (E.D. Tex.2000) (stating that §1404 analysis remains the same "regardless whether the litigant moves for inter or intra district transfer.")

Whether a transfer of venue is "convenient" and "in the interests of justice" turns on a number of private and public interest facts, none of which are dispositive. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Ams. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  The private interests include: (1) the relative ease to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Piper Aircraft Co.* 454 U.S. at  241 n.6.  The public interests include: (1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws.  *Id.*

**A.      Private Interest Factors**

**1.      Relative Ease of Access to Sources of Proof**

Plaintiffs' lawsuit is based primarily on activities and exchanges that occurred in Austin, Texas, despite the fact that the corporate defendants have their principal place of business in Pecos, Texas.  Additionally, the Plaintiffs' principal place of business includes Madison, Wisconsin, where two meetings between Chism and Imago took place, and the United Kingdom.  This Court will address the ease of accessing evidence in either Pecos or Austin.

Evidence related to Chism's work with International Sematech is located in Austin.  In Defendants' own "Memorandum of Law in Support of Defendants' Motion to Dismiss for Improper Venue, or in the Alternative Motion to Transfer Venue" filed in the Western District of Wisconsin, Defendants stated that the "majority of allegations center on transactions occurring at International Sematech" and that "the predominant factor" in a 1404(a) motion to transfer this case from Wisconsin to the Western District of Texas was that the "witnesses and documents with International Sematech are located in Austin, Texas.  Docket No. 16, Pg. 6.

Defendant Chism lives in Austin.  The mailing address for Chism's provisional patent applications, although containing a Pecos, Texas mailing address, also includes an Austin, Texas mailing address. Plaintiffs' Complaint, Docket No. 2, Exhibits 3 & 4.  Furthermore, Chism has accepted mail at an Austin address for Optical Analytics regarding the Conditional Standstill and Tolling Agreement.  Chism has accepted service for himself, on behalf of Optical Analytics, and on behalf of Quantumstage at an Austin address.  Affidavits and Service of Process, Docket No. 5, Docket No. 2, Exhibit 18.  Generally, technological advances in copying, storing, and transferring

6

data, have limited the weight to be given the accessibility and location of sources of proof in the § 1404(a) analysis.  Nevertheless, this factor weighs in favor of transferring the case to Austin.

### 2.      Availability of compulsory process to secure attendance of witnesses

In the Defendants' Rule 26 Disclosure filed in the Western District of Wisconsin, Defendants listed five non-party witnesses that work for International Sematech, located in Austin.  Declaration of Lisa Kobialka in Support of Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue, Docket No. 22, Exhibit H, p. 2. The other parties listed are attorneys, parties to the action, or employees of Plaintiffs.  These non-party witnesses would all appear to be outside of the Pecos Court's subpoena power, but reside within the Austin Court's subpoena power.[3]

Neither Defendants nor plaintiffs have stated that the compulsory process would be necessary to compel non-party witnesses to testify.  However, this factor weighs in favor of transferring the case to the Austin Division if compulsory process becomes necessary.

### 3.      Cost of attendance for willing witnesses

Much of the focus of Plaintiffs' argument for transfer to Austin concerns the inconvenience of a trial in Pecos for both party and non-party witnesses and the cost of attendance for willing witnesses.  Generally, "venue is considered convenient in the district or division where the majority of witnesses are located." *Tapia*, 2006 WL 2620530 at *3; *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 657 (E.D. Tex. 1999).  Increases in distance traveled means additional travel time, which in turn, increases the likelihood of meal and lodging expense, overnight stays keeping witnesses away from their employment, and scheduling witnesses at long distances increases difficulty and complexity for the court.  *See In re Volkswagen*, 371 F.3d 201, 204-05 (5th Cir. 2004).

---

[3]Subpoenas issued to non-party witnesses that reside outside the district court's 100-mile subpoena power are subject go motions to quash. Fed. R. Civ. P. 45(c)(3); *In re Volkswagen,* 371 F.3d 201, 205 n.4 (5th Cir. 2004).

The convenience and costs of non-party witnesses is more important and is given greater weight than convenience of party witnesses.  *Tapia,* 2006 WL 2620530 at *3; *Zoltar Satellite Sys. V. LG Elecs. Mobile Commc'ns Co.,* 402 F. Supp. 2d 731, 739 (E.D. Tex. 2005).

No witnesses reside in Pecos.  Chism and non-party witnesses related to International Sematech reside in Austin.  Plaintiffs' witnesses reside in Wisconsin and the United Kingdom.

For witnesses located in Austin, Texas, they would have to drive approximately 800 miles round trip or take a flight to the Midland International Airport, the closest airport to Pecos offering commercial flights, and then drive approximately 90 miles to reach Pecos.  The non-party witnesses residing in Austin would therefore have to undertake much more travel than if they could testify in their residence city.  For witnesses located outside of the state of Texas, it would require additional flights and connections to reach Pecos than would be necessary to reach Austin.

Furthermore, in the event that this Court decided not to transfer the case to the Pecos Division, Defendants specifically requested that the case be transferred to the Austin Division because Chism and a number of independent witnesses reside in Austin.

The cumulative evidence shows that the parties would experience greater inconvenience if the case was transferred to Pecos.  This factor weighs heavily in favor of transferring the case to Austin.

### 4.    All other practical problems

Defendants argued that the pending State Court Action in Reeves County  makes the Pecos Division a logical choice for transfer.  Although transferring this action to the Pecos Division would put both actions in the same city, it would not increase the convenience of the parties because witnesses would still have to travel to Pecos for appearance in the federal or state courts.

**B.      Public Interest Factors**

**1.      Administrative difficulties flowing from court congestion**

As of the date of this order, Austin Division has 746 civil and 74 criminal cases pending. The Pecos Division has 62 civil and 161 criminal cases pending.  Despite the greater number of judges and magistrate judges in the Austin Division, the number seems to still indicate that the Pecos Division would have a lighter civil case load.  This factor weighs in favor of transferring this action to the Pecos Division.

**2.      Local interest in having localized controversies decided at home**

While the Western District of Texas has a general interest in resolving this case, Plaintiffs allegations focus on conduct and events that occurred in the Austin area.  Defendants have also stated that "the majority of allegations center on transaction occurring at International Sematech," which is located in Austin.  Docket No. 16, Pg. 5.  Potential witnesses will primarily be drawn from the Austin area, including third party witnesses from an Austin based high-tech company and the individual defendant himself.  Both Quantumstage and Optical Analytics are headquartered in Pecos, Texas. Both the Austin and Pecos Divisions have an interest in deciding this controversy.  This factor is neutral.

**3.      Familiarity of forum with law governing the case**

Neither the Pecos nor the Austin Division has a greater familiarity with the federal laws and the legal issues presented in this action.  This factor is neutral.

**4.      Avoidance of unnecessary problems of conflict of laws**

There are no apparent conflicts of laws issues that would arise by transferring this case to either the Austin or the Pecos Division.  This factor is neutral.

**IV. Conclusion**

After reviewing the briefs from both parties, considering the factual record, the convenience

to all of the parties, and balancing the public and private interests enumerated above, this Court will

TRANSFER this case to the Austin Division of the Western District of Texas.

It is so ORDERED.

SIGNED this 8th day of August, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

10